Knight v. Bean.

John Knight *versus* Daniel Bean & al. Adm'rs.

| 29 531|
| 93 577|

Where the plaintiff held a bond from a third person for the conveyance of a tract of land on the payment of six hundred dollars in six months, and sold and assigned *to the defendant one half of the bond*, and received the written promise of the latter to pay the plaintiff $625,00 ; and the defendant, before the expiration of the six months, gave the plaintiff one half of the six *hundred* dollars, to be by him paid to the obligor, and the plaintiff promised to pay the same, as well as his own half, but neglected so to do, and kept the money, and the time expired, without payment ; *it was held*, that the plaintiff could not maintain an action to recover the $625,00.

If a stipulation be for the performance of an act, which the party alone is competent to perform, and he is prevented by the act of God from performing it, the obligation is discharged.

THE plaintiff presented his account against the estate of James Steele, the intestate, to the commissioners, the estate having been represented to be insolvent, who allowed but a part of it. The following is a copy :

"The estate of Gen. James Steele to John Knight          Dr.

"*Feb. 1833.*   To passage and conveyance of said
    Steele one journey to the east of Baskchegan
    river,                                                              $  35,00

"To damages on non-fulfilment of contract of Dec.
    21, 1835, by said Steele, to give warranty deed
    of land in Cold river, and to give up note, con-
    fession, &c.                                                       350,00

"To damages on non-fulfilment of said Steele's
    contract of Dec. 21, 1835, to pay $625, in 3,
    6 and 9 months, in consideration of my assign-
    ment of Ingham's bond to him,                        750,00

"1836, March.   To expenses and services in attend-
    ing to said bond, and endeavoring to get a deed
    from said Steele,                                                30,00
                                                                        ─────────
                                                                        $1165,00"

The plaintiff then, in the mode provided by law, brought an action on his demand. The writ contained ten long counts. The following is a copy of the writing, signed by Steele, of

Dec. 21, 1835. "Brownfield, Dec. 21, 1835. This may certify, that I have this day purchased of John Knight, one half of a bond of ten thousand acres of land, lying in Indian stream in the State of New Hampshire. Bond dated 23d September last past, signed by Oliver Ingham to Aaron Pottle, which I am to pay him six hundred and twenty-five dollars, to be paid in six, nine and twelve *months*, in equal *annual* payments. Provided there is such land as mentioned in the bond as described." On Sept. 25, 1835, Oliver Ingham gave a bond to Aaron M. Pottle, wherein he covenanted to convey to Pottle, "ten thousand acres of land, situate and lying in the territory of Indian stream, being undivided land of Wales purchase, after the said Pottle shall first well and truly pay the said Ingham the sum of six cents per acre within six months from this date." This bond was assigned to the plaintiff by Pottle on Oct. 27, 1835. On Dec. 21, 1835, the plaintiff made a writing on the same bond in form as follows: "Brownfield, Dec. 21, 1835. I have this day sold one half of my right to the within bond to James Steele, and received payment in a valuable consideration." "John Knight."

Steele gave to the plaintiff a writing of the following tenor. "Brownfield, Dec. 21, 1835. This may certify, that I agree to give John Knight a good warranty deed of a tract of land that I gave Benjamin Day a bond of, that belongs to William Steele's estate in Cold river by his producing the bond.

"James Steele."

"I am to give up a note I hold against Benjamin Day for seventy-five dollars, and to discharge a confession I hold against Day and John Knight, before Stephen Chase.

"James Steele."

The report of the trial is quite voluminous; and as it is believed, that enough appears in the opinion of the Court, in addition to what has already been given, to understand the questions of law, no abstract will be attempted.

Able and extended arguments in writing were furnished to the Court. They are too long for insertion, and cannot well be abridged.

Knight *v.* Bean.

*Deblois* and *A. R. Bradley*, for the plaintiff.

*Howard & Osgood*, for the defendants.

The opinion of the Court was drawn up by

WHITMAN C. J. — The demand of the plaintiff, having been submitted to the commissioners on the claims against the estate of the defendant's intestate, Steele, and but a small portion of it having been allowed by them, he has, according to the provisions of law, brought his action to recover the whole of it. The parties, after the evidence, at the trial, had been developed, agreed that the same should be submitted to the whole Court, upon a report thereof to be made by the Judge presiding at the trial; and " that such judgment should be entered upon nonsuit or default, as the facts and evidence would warrant on the application of legal principles."

The plaintiff's claim consists of four items. The first in importance of which, is a claim for $750,00, for the non-fulfilment of the intestate's contract of December 21, 1835, to pay $625,00, in three, six and nine months," in consideration of the assignment of the bond of one Ingham to him. This item arises upon a writing of the date named, in which the intestate acknowledged the assignment of " one half of a bond for ten thousand acres of land, lying on Indian stream, in New Hampshire," and promising to pay therefor as above, " provided there is such land as mentioned in the bond described." The bond is conditioned for the conveyance of " ten thousand acres of land, situated and lying in the territory of Indian stream, being undivided land of Wales purchase so called."

The first objection to this item of the claim, is, that there is no such land as described. If there be not, of course the intestate's promise is void. Much of the evidence tends to show, however, that there was a region of territory called the Indian stream tract. And it may be that what, in said bond, is called the Wales purchase, was a part of it; and was probably supposed so to be. But it seems unnecessary for us to investigate these particulars,

The assignment was but of one half of the interest under the bond ; so that the intestate, and the plaintiff became jointly interested therein. The sum to be paid the obligor, and without the payment of which the assignees of the obligee could not become entitled to a conveyance, was six hundred dollars. The intestate furnished the plaintiff with one half of that sum to enable him to comply with the conditions of the bond, by paying it, together with the other half, which it belonged to him to pay, in order to become entitled to the conveyance ; and it is manifest that it was the understanding and agreement between them that the plaintiff should do whatever was needful for that purpose ; instead of which he kept the $300,00, and never complied with the terms requisite to secure a conveyance of the land ; so that by the misfeazance of the plaintiff the consideration for the $625,00, utterly failed, and the obligation on the intestate to pay it was annulled.

There is another ground on which reliance might well be placed, in defence, against this item of claim. Looking at the whole complexion of the transaction, at the strange and crazy state of the title as exhibited in the deeds ; and at the time of the plaintiff's becoming connected with it when, as litigation for some years past has abundantly evinced, a very unnatural state of excitement in speculation was prevalent, indicative of an utter disregard of all regularity in negotiation, if not of moral honesty ; and connecting this with the evidence of the want of good faith on the part of the plaintiff, but too plainly indicated, by his letters to the intestate, when compared with the testimony of the witnesses, Davis and Pottle, the presumption of a premeditated fraud upon the intestate, becomes very powerful, if not absolutely conclusive. We cannot doubt, therefore, that the commissioners did right in rejecting this item of claim.

The next item in amount is, " for damage in non-fulfilment of contract of Dec. 21, 1835, by said Steele, to give warranty deed of land in Cold river, and give up note, confession, &c." To support this item, a writing is produced, signed by the intestate, in which he promises to convey, by deed of warranty,

to the plaintiff, a certain lot of land in Fryeburg, upon his pro-
ducing a bond, which he had before given to one Day, to con-
vey the same to him, on certain conditions, which seem not to
have been complied with; and the intestate further stipulated
in said writing, to give up a note he held against the plaintiff
and said Day. This writing bears date the same day, with the
promise before considered, to pay to the plaintiff $625,00;
and the evidence affords much reason to believe, that they
formed one transaction.

One of the plaintiff's counts states the assignment of the
bond to have furnished the consideration for the promise to
convey this lot of land; and this averment of the plaintiff we
may well believe to have been true ; for without it no adequate
consideration for such a conveyance would seem to have been
in contemplation of the intestate, and if the consideration
stated be not the true one the plaintiff could not recover. The
producing of the bond to Day, which had ceased to be obliga-
tory, was an incident, collateral in its nature, and cannot be
regarded as the motive to the contract. The fact being so,
the consideration for the promise to make such conveyance
must stand upon the same basis with the promise to pay the
$625,00, and must fail with it.

But in reference to this claim for a conveyance, it was to be
made by the intestate upon the performance of a condition by
the plaintiff. There was no stipulation that any one else should
make it in any event. His administrators as such, would have
no power to make it, even if there had been a stipulation that
they should.

Again, the condition upon which it was to be made, viz.
upon the production of the bond before given to Day, was
that, and of course during his life, it should be produced to
him. The production of it to any one else, after his decease,
would not be a compliance with the terms of the condition.
No one else was authorized to receive it, or to do any act upon
its being produced. It does not appear ever to have been
produced to the intestate in his lifetime. He therefore, if the
contract was obligatory upon him, would not appear to have

committed a breach of it. There is then no foundation for a personal claim, under and by virtue of it, against his estate. There are breaches of contract which may take place after the decease of the individual making it; as where a man promises to pay money at a stated time, and dies before the time. The non-payment at the time agreed upon will be a breach of contract, although after his decease, which will authorize an action against his executors or administrators; they being the representatives of the deceased, and intrusted with the fund out of which payment is to be made; and cases of a similar kind are numerous.

But if the stipulation be for the performance of an act, which the party alone is competent to perform, if prevented by the act of God from performing it, the obligation is discharged; as if one man should agree to work for another for a specified time, and should die before the expiration of the period agreed upon, the obligation would be discharged. So if one person should agree to wait and tend upon another personally for a year, and the person to be waited and tended upon should die before the expiration of the time, the other party would be absolved from his undertaking. Real estate can be conveyed by no one but the owner, unless it be by special authority from him or by regulations of law. Hence the provision by statute, formerly, that in case of an agreement to convey real estate upon condition, if the person contracting to convey, died before making the conveyance, a process might have been had to authorize the conveyance to be made. Now by the Revised Statutes, this Court, as a Court of equity, is authorized to administer relief in such cases.

The two other items of the plaintiff's demand are for services performed, and for money expended for the use of the intestate; first in endeavoring to obtain a deed under the bond from Ingham, and secondly, on a journey upon which he started with the intestate, for some purpose which does not distinctly appear. As to the latter of these items, there is no evidence showing satisfactorily, any service or expenditure of money for the use of the intestate. The witness, Downing,

testifies, that he saw the plaintiff and the intestate start from the plaintiff's in his sleigh, drawn by his horse; and knows the plaintiff was gone about three weeks. Of the intestate he knows nothing more. Upon such loose evidence showing nothing definitively of the object of their journey, whether for the use of one or the other or both; how far they went, or how long they were together, nor which paid the expenses of the journey, it is impossible to come to a satisfactory conclusion, that the plaintiff is entitled to recover any thing. As to the endeavors to obtain a deed, under the bond from Ingham, what is before said will suffice to show that we cannot become satisfied that he has any just claim for compensation for services in reference to that business.

*Judgment must therefore be entered upon nonsuit.*